**TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellant,**

v.

**MAJOR BRANDS OF TEXAS, INC., Appellee.**

**No. 12007.**

Court of Civil Appeals of Texas, Austin.

March 21, 1973.

Crawford C. Martin, Atty. Gen., and Jay Floyd, Asst. Atty. Gen., Austin, for appellant.

Frank J. Adelman, San Antonio, for appellee.

PHILLIPS, Chief Justice.

Appellant Commission is here on appeal from a judgment of the trial court declaring Article 666–15½, subd. A(9)(b), Vernon's Ann. Texas Penal Code, unconstitutional on the ground of vagueness and permanently enjoining the appellant from enforcing this provision of the Code with respect to those nonresident sellers with whom appellee has business dealings or to appellee's purchaser as a holder of a Texas

wholesaler's permit under the Texas Liquor Control Act; and further, enjoining the Appellant Commission from doing any act which would in any way apply Article 666–15½, subd. A(9)(b) V.T.P.C.

We reverse and render this judgment.

Appellant is before us on two points of error, briefed together, contending that the trial court erred in holding Article 666–15½, subd. A(9)(b), Vernon's Texas Penal Code, unconstitutional and in enjoining the enforcement of this provision of the Penal Code. We sustain these points.

Appellee filed this suit in the trial court contending that it is the holder of a Texas Wholesaler's Permit authorizing it to purchase and import liquors into the State of Texas. It alleges, and it is agreed, that it can only purchase alcoholic beverages from the holders of a Nonresident Seller's Permit issued by appellant. Its primary contention, sustained by the trial court, is that the "primary American source of supply" provision in Article 666–15½, subd. A (9)(b) is unconstitutionally vague in violation of the Texas Penal Code, the Constitution of the State of Texas, and the Constitution of the United States. This provision is as follows:

"(b) It shall be unlawful for any holder of a Nonresident Seller's Permit to solicit, accept, or fill any order for any distilled spirits or wine unless the permit holder is the primary American source of supply for the brand of distilled spirits or wine sold or sought to be sold."

 It is basic that any legislative enactment is presumed to be valid; that one attacking a statute has the burden of showing it to be clearly prohibitive of some constitutional provision. Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 ·(1939); Smith v. Davis, 426 S.W.2d 827 (Tex.Sup.1968); Texas State Board of Barber Examiners v. Beaumont Barber College, 454 S.W.2d 729 (Tex.Sup.1970).

The applicability of these presumptions to any provision of the Texas Liquor Control Act is emphasized by the directive in Article 666–2, Vernon's Texas Penal Code, that:

"This entire Act shall be deemed an exercise of the police power of the State for the protection of the welfare, health, peace, temperance, and safety of the people of the State, and all its provisions shall be liberally construed for the accomplishment of that purpose."

To begin with, no person may engage in any phase of the alcoholic beverage industry unless such authority is specifically granted by the Commission. Article 666–4, V.T.P.C. Distilled spirits and most wines sold in Texas are produced out-of-state. In order to provide the Commission with a means of enforcement over such out-of-state producers, the Act requires that those who are authorized to import—the wholesalers—purchase only from holders of Nonresident Seller's Permits. Article 666–15(6)(7) and (7a), V.T.P.C.

A Nonresident Seller's Permit authorizes the holder thereof to solicit or take orders for liquor from Texas permit holders authorized to import liquor into this State and to ship liquors into this State. Article 666–15½, subd. A(1)(a) and (b), V.T.P.C. Article 666–56, V.T.P.C., provides that a nonresident seller, in order to make any shipment into the State of Texas, must obtain a certificate of label approval from the Commission.

Although the Commission is empowered to issue such rules and regulations as are deemed necessary under Article 666–6, V.T.P.C., the Commission and its administrator decided shortly after the statute in issue was enacted that no such rules and regulations were necessary.

Appellee offered no testimony from a nonresident seller that the statute in issue was vague, indefinite or incapable of understanding. In fact, the evidence in a

companion case [1] discloses that there are more than 200 active operating nonresident seller's permits issued by the appellant with each holder thereof submitting to the appellant that he is the primary American source of supply for the brand or brands sought to be sold in Texas.

The principal testimony concerning the construction of this term was presented by Mr. Joe Darnall, the appellant's hearing officer and attorney, a witness called by appellee. Darnall testified at length concerning the construction of the term and its relationship to production, importation, distilling and marketing. Darnall testified that "primary American source" as applied by appellant is the first source in the channels of commerce that sells to wholesale Texas markets in the United States; that this could be from any one of a number of different points, but the common denominator is the first source in the chain of commerce that sells to liquor wholesalers in the United States. Darnall went on to explain that there are a number of different ways in which a person might be the primary American source. It might be the original producer of the product if he sells directly to liquor wholesalers. That it is a practice in the industry sometimes for the producer to sell his entire output to another person who then has "cornered the market, so to speak" and thus becomes the exclusive seller to the market. He further explained that there might be an exclusive agent for the U.S. market without having an exclusive agency for the rest of the world. It might be a winery, selling to liquor wholesalers; it might be a bottler. It's the first point in the channel of commerce. The highest level that sells to wholesalers in the United States.

The only professions of inability to understand the statute by anyone affected by it have come from appellee and two Oklahoma wholesalers whose positions have been, this day, ruled against by this Court.[2] It is also interesting to note that these two wholesalers have never claimed to be a primary American source.

Darnall further testified that there was complete agreement among the members of the Commission staff that the term "American", as used in the statute, meant sale to American markets and that nothing else in the statute appeared to present even a potential question as to interpretation.

Appellee's major effort to demonstrate unconstitutional vagueness was by examination of appellant's hearing officer Darnall. Darnall was repeatedly asked hypothetical questions about who would or would not be a primary American source of supply under certain circumstances, and whether, under certain circumstances, there might be more than one primary American source for the same brand of distilled spirits or wines. In response to these hypothetical possibilities, Darnall answered that the probabilities of any one of them ever happening was extremely remote, and further, that it was inconceivable that a situation would arise in which there would ever be more than two possible primary American sources. That although the Commission has authority to issue rules and regulations to supplement any provision of the Texas Liquor Control Act and to make public its construction of any statute considered to be unclear, no such action has ever been taken with regard to the statute here involved. The statute is meaningful to the Commission, has been uniformly enforced and applied without any complaints

1. 12,017—Texas Alcoholic Beverage Commission v. Pioneer Wholesale Liquor Distributors, 492 S.W.2d 622 handed down this day by this Court.

2. 12,017—Texas Alcoholic Beverage Commission v. Pioneer Wholesale Liquor Distributors, 492 S.W.2d 622.

12,009—Texas Alcoholic Beverage Commission v. Jerry F. Rutledge, DBA Capitol Beverage Company, 492 S.W.2d 622.
12,022—Jerry F. Rutledge, DBA Capitol Beverage Company v. Texas Alcoholic Beverage Commission, 492 S.W.2d 622.

from either the wholesale level or the non-resident seller level of the industry other than those made by appellee and the two Oklahoma wholesalers mentioned above.

■ A review of this evidence discloses that appellee has failed to establish the criteria necessary under the law to hold the statute unconstitutional because of vagueness. In Texas Liquor Control Board v. Attic Club, Inc., 457 S.W.2d 41 (Tex.Sup. 1970), appeal dism., 400 U.S. 986, 91 S.Ct. 459, 27 L.Ed.2d 435 the Court held that a statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the proscribed conduct; or when a required course of conduct is stated in terms so vague that men of common intelligence must guess at what is required; or, when there is a substantial risk of miscalculation by those whose acts are subjected to regulation. It is impossible for any of these contingencies to occur in the case before us for the simple reason that before one may qualify as a primary American source, he must secure a nonresident seller's permit from the Commission. His qualification is then passed upon by the Commission with no mystery whatsoever attendant to his future status.

■ Irrespective of the Commission's required action on application for a non-resident seller's permit and even if one were required to determine the "primary American source", at his peril, appellee has failed to demonstrate that the term in question is not readily ascertainable, or understandable, by those in the trade. In construing a statute, Section 1 of Article 10, Vernon's Civil Statutes provides that "The ordinary signification shall be applied to words, *except words of art or words connected with a particular trade or sub-*

*ject matter,* when they shall have the signification attached to them by *experts in such art or trade,* with reference to such subject matter." (Emphasis added) State v. International and G. N. Ry. Co., 107 Tex. 349, 179 S.W. 867 (1915) held that in order for the provisions of an act to be enforceable, they should be plain enough in meaning for those operating the industry affected by it to know and realize by what means they would breach its terms. We hold that under the evidence before us, members of the liquor industry are well aware of the meaning of the term "primary American source". The statute in question is sufficiently definite for those affected by it to understand its meaning so as to know under what circumstances they would be transgressing its provisions. This is all that is or should be required. International and G. N. Ry. Co., *supra;* Western Co. v. Sheppard, 181 S.W.2d 850 (Aus., Tex.Civ.App.1944, writ ref.); Jordan v. State Board of Insurance, 160 Tex. 506, 334 S.W.2d 278 (1960); Texas Liquor Control Board v. Attic Club, Inc., *supra;* Department of Public Safety v. Buck, 256 S.W.2d 642 (Aus., Tex.Civ.App.1953, error ref.).

■ It is also presumed that if a statute is susceptible of a construction which will render it valid and operative, it must be so construed even though it might also be possible to interpret the provisions in a manner which would result in its invalidity. McKinney v. Blankenship, 154 Tex. 632, 282 S.W.2d 691 (1955); State v. Shoppers World, 380 S.W.2d 107 (Tex. 1964).

■ We also overrule appellee's contention that the law before us is void and unconstitutional in that it violates Art. 3,[3] Section 35 of the Texas Constitution, Ver-

---

3. The relevant portion of the Title to House Bill 3 enacted by the 62nd Legislature, 1st Called Session, is as follows: ". . . amending paragraph 9, Subsection A, Section 15½, Article 1, Texas Liquor Control Act, as amended (Article 666–15½ Vernon's Texas Penal Code); levying an annual fee for a Nonresident Seller's Permit and making unlawful certain conduct; . . ."

non's Ann.St. This Article proscribes more than one subject being expressed in a bill's title and also any subject embraced in an act and not expressed in the title. Here the caption identifies the provision amended and indicates the two purposes of the amendment by the phrase "levying an annual fee for a Nonresident Seller's Permit and making unlawful certain conduct". Acts 62nd Leg. 1st C.S.1971, Ch. 3, p. 23. Also see Ellison v. Texas Liquor Control Board, 154 S.W.2d 322 (Tex.Civ.App.1941, error ref.); Board of Water Engineers v. City of San Antonio, 155 Tex. 111, 283 S. W.2d 722 (1955); Central Education Agency v. Independent School Dist., 152 Tex. 56, 254 S.W.2d 357 (1953); Schlichting v. Texas State Board of Medical Examiners, 158 Tex. 279, 310 S.W.2d 557 (1958).

■ Likewise, we overrule appellee's contention that, Article 666–15½, subd. A(9)(b), V.T.P.C. is unconstitutional and void because it violates Article 1, Section 26, Constitution of the State of Texas proscribing monopolies. This constitutional provision has never been construed either as prohibiting regulatory legislation nor as requiring that anyone who desires to carry on a particular type of business must be allowed to do so. Auto Transit Co. v. City of Fort Worth, 182 S.W. 685 (Tex.Civ. App.1916, error ref.); Gill v. City of Dallas, 209 S.W. 209 (Tex.Civ.App.1919, no writ hist.); Charles Scribner's Sons v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924); City of San Antonio v. San Antonio Irrigation Co., 118 Tex. 154, 12 S.W.2d 546 (Tex.Com.App.1929); Sheppard v. Owl Refining Co., 68 S.W.2d 1101 (Aus., Tex. Civ.App.1934, no writ hist.).

■ The case at bar involves a statute that can be sustained under the police power of the state. Henderson Company v. Thompson, 300 U.S. 258, 57 S.Ct. 447, 81 L.Ed. 632 (1937); Palmer v. Unauthorized Practice Committee of State Bar of Texas,

438 S.W.2d 374 (Tex.Civ.App.1969, no writ hist.).

■ Appellee's contention that the statute before us denies equal rights under Art. 1, Sec. 3 of the Texas Constitution is untenable as appellee cannot show how the statute fails to apply equally to all members of a class. Dodgen v. Depuglio, 146 Tex. 538, 209 S.W.2d 588 (1948).

The judgment of the trial court is reversed and rendered.

Reversed and rendered.

SHANNON, Justice (dissenting).

I dissent.

Appellee pleaded, among other things, that Art. 666–15½, subd. A(9)(b) was in violation of Article 6 of the Penal Code and in violation of Art. I, Section 19 of the Constitution of Texas.

Article 6 provides, "whenever it appears that a provision of the penal law is so indefinitely framed or of such doubtful construction that it cannot be understood, either from the language in which it is expressed, or from some other written law of the State, such penal law shall be regarded as wholly inoperative".

An examination of the transcript reveals that the judgment was based *both* on the violation of the penal provision and the constitutional provision.

The majority opinion seems to be grounded upon constitutional considerations despite the well accepted rule that a court will not pass on the constitutionality of a statute if the case may be decided on other grounds. San Antonio General Drivers, etc. v. Thornton, 156 Tex. 641, 299 S.W.2d 911 (1957).

From an examination of the record, I am of the opinion that Art. 666–15½, subd. A(9)(b) is in violation of Art. 6 of the Penal Code in that the term, "primary

**622**

American source of supply", is of such doubtful construction that it cannot be understood.

I would affirm the judgment.