[Civ. No. 4696.    Fourth Dist.    Mar. 2, 1955.]

ROBERT D. SMITH et al., Respondents, v. CLIFFORD E. PETERSON, as Commissioner of California Highway Patrol, et al., Appellants.

'242

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Appellants.

Matt Goldstein, George A. Schroeder and William A. Quinlan for Respondents.

GRIFFIN, J.—This proceeding involves the constitutionality of sections 673 and 684 of the Vehicle Code in reference to the prevention of excessive or unusual noises from mufflers on automobiles. These sections read in part as follows:
"Sec. 673. Every motor vehicle subject to registration and operated on a highway shall at all times be equipped with an adequate muffler in constant operation and properly maintained to prevent any excessive or unusual noise and no such muffler or exhaust system shall be equipped with a cut-out, by-pass, or similar device. No person shall modify the exhaust system of a motor vehicle in a manner which will amplify or increase the noise emitted by the motor of such vehicle above that emitted by the muffler originally installed on the vehicle and such original muffler shall comply with all of the requirements of this section . . ."
"Sec. 684. It shall be unlawful for any person to sell, lease, install or replace, either for himself or as the agent or employee of another, or through such agent or employee, any . . . muffler, exhaust, . . . for use in any vehicle, . . . that is not in conformity with the provisions of this code or the regulations made thereunder."
Plaintiffs, Robert D. Smith, transacting business as Advance Muffler Company, and Forrest W. Ricks, its agent oper-

ating in Fresno, allege that the California Highway Patrol Commissioner, and other officers, periodically and frequently arrested them and their customers for installing, selling and replacing mufflers upon various motor vehicles in violation of these sections; that plaintiffs were so arrested on a complaint filed in Fresno Municipal Court on December 18, 1952, charging them with the "sale or installation of unlawful equipment . . . mufflers"; that they have suffered great detriment and expense in defending said actions, posting bail, etc.; and that the trial of the above mentioned action was continued for trial at a later date. A restraining order was sought restraining the officers from enforcing or attempting to enforce the provisions of these sections.

It is also alleged that plaintiffs, for approximately 13 years, have been engaged in the business of manufacturing and installing mufflers, etc., particularly their "Advance Steel Pack Muffler," and that they have been manufactured, sold and installed on cars throughout the state. It is then claimed that these mufflers do not make any excessive or unusual noise, do not annoy the public, and that it is impossible for plaintiffs to know whether these exhaust pipes will amplify or increase the noise emitted by the motors of the vehicles upon which they are installed above that emitted by the mufflers originally installed thereon, and that accordingly these sections violate the Constitutions of the United States and of California in the following particulars, i. e., that these sections are discriminatory and violate plaintiffs' right of equal protection of the laws and deprive them of their property and their liberty without due process of law, and their right to follow a lawful occupation; that these sections are uncertain, indefinite and vague in that no reasonable standard is set up; that they interfere with the rights of plaintiffs to dispose of their property in a lawful manner and to make a lawful contract; that they tend to create a monopoly for the benefit of the manufacturer of mufflers originally installed on vehicles; that they are arbitrary, capricious, unreasonable and confiscatory; that the acts alleged in these sections are made criminal acts of the plaintiffs although such acts are performed by other persons; and that under the provisions of said sections, if plaintiffs installed such mufflers in compliance with said sections, they could be held guilty even though the operator of said vehicle otherwise created excessive or unusual noises by the *operation* of said vehicle, citing such authority as United States Constitution,

14th Amendment; California Constitution, article III, section 1; article IV, section 1; article I, sections 11, 13 and 21; *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436 [254 P.2d 29] ; *Pacific Palisades Assn.* v. *City of Huntington Beach,* 196 Cal. 211 [237 P. 538, 40 A.L.R. 782] ; *Schaezlein* v. *Cabaniss,* 135 Cal. 466 [67 P. 755, 87 Am.St. Rep. 122, 56 L.R.A. 733] ; *Connally* v. *General Const. Co.,* 269 U.S. 385 [46 S.Ct. 126, 70 L.Ed. 322] ; *People* v. *Forbath,* 5 Cal.App.2d Supp. 767 [42 P.2d 108] ; *Franchise Motor Freight Assn.* v. *Seavey,* 196 Cal. 77 [235 P. 1000] ; *State* v. *Lantz,* 90 W.Va. 738 [111 S.E. 766, 26 A.L.R. 894] ; *Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603 [76 P.2d 97] ; and *People* v. *International Steel Corp.,* 102 Cal.App.2d Supp. 935 [226 P.2d 587].

Section 673, as reasonably construed, fixes a standard of all originally installed mufflers in this, that they must ''comply with all of the requirements of this section.'' This section requires that they must be ''effective in reducing noise'' and be ''an adequate muffler'' so as to ''prevent any excessive or unusual noise,'' and not be equipped with a cut-out, by-pass, or similar device. It then provides that every motor vehicle operated on the highway shall, at all times, be so equipped and maintained in constant operation. It then provides that no person shall modify the *exhaust system* (which includes placing a muffler thereon) in a manner which will amplify or increase the noise emitted by such vehicle above that emitted by the muffler originally installed on the vehicle. In fixing the original standard it must be presumed that at the time of the original installation of the muffler there was a compliance with the law in its installation, and that the vehicle was equipped with an adequate muffler so as to prevent any ''excessive or unusual noise.'' (Code Civ. Proc., § 1963, subd. 33.) Section 684 then makes it unlawful for a person, either for himself or as agent for another, to sell, lease, install or replace any muffler or exhaust that is not in conformity with the provisions of that section. We see no justification for the conclusion that plaintiff might be criminally liable for the operation of a vehicle by another with a defective muffler if plaintiffs installed or replaced a muffler that complied with said section 673.

It was the conclusion of the trial court, expressed in the memorandum opinion, that by the descriptive words ''excessive'' or ''unusual'' noise, the noise emitting from such muffler may appear to be excessive or unusual to one and

may not be excessive or unusual to another; that accordingly the only standard fixed would be the opinion of the law-enforcing officer; and that a more definite and better standard than that fixed in the section, as to noise, should be employed such as the standard of measuring sound or noise in decibels. It concluded that the provisions of section 684, *supra*, insofar as it attempts to provide enforcement of section 673 of the Vehicle Code, are unconstitutional and unenforceable, and accordingly restrained defendants from enforcing them against plaintiffs.

No request for a reporter's transcript was made by defendants on this appeal. However, plaintiffs thereafter made in this court an application to produce the evidence submitted to the trial judge in the lower court for the purpose of showing the unenforceability and the unconstitutionality of these acts, as applied to plaintiffs. This motion was denied, and accordingly no issue of fact is here presented.

It is defendants' position here that plaintiffs are not entitled to an injunction unless the statute in question is unconstitutional and, accordingly, unenforceable, citing section 526, subdivision 4, Code of Civil Procedure. The contentions are that these sections are not vague, indefinite or uncertain and that at the time of their enactment they provided for the only reasonable standard upon which they could operate fairly and without discrimination, citing *Paraco, Inc.* v. *Department of Agriculture*, 118 Cal.App.2d 348 [257 P.2d 981]; *Jones* v. *City of Los Angeles*, 211 Cal. 304 [295 P. 14]; and *Bueneman* v. *City of Santa Barbara*, 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895]. Accordingly, if the standard fixed is proper and might reasonably be applied to plaintiffs, the demurrer of defendants to plaintiffs' complaint might well have been sustained without leave to amend and the evidence adduced at the trial would not be material to the issues involved but might become material in the trial of the crime charged, after the prosecution established, beyond a reasonable doubt, the fact that defendants in that action had violated said sections.

█ It is well settled that a criminal statute which is so indefinite, vague and uncertain that the definition of the crime or standard of conduct cannot be ascertained therefrom, is unconstitutional and void. █ However, there is a uniformity of opinion among the authorities that a statute will not be held void for uncertainty if any reasonable and practical construction can be given to its language.

Nor does the fact that its meaning is difficult to ascertain or susceptible of different interpretations render the statute void. All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. Doubts as to its construction will not justify us in disregarding it. In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them the courts must endeavor, if possible, to view the statute from the standpoint of the reasonable man who might be subject to its terms. It is not required that a statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. It is not necessary that a statute furnish detailed plans and specifications of the acts or conduct prohibited. The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. (*Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701]; *Collins* v. *Riley,* 24 Cal.2d 912 [152 P.2d 169]; *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217]; *People* v. *Ring,* 26 Cal.App.2d Supp. 768 [70 P.2d 281]; *Smulson* v. *Board of Dental Examiners,* 47 Cal.App.2d 584 [118 P.2d 483]; *Lorenson* v. *Superior Court,* 35 Cal.2d 49 [216 P.2d 859]; *Sproles* v. *Binford,* 286 U.S. 374 [52 S.Ct. 581, 76 L.Ed. 1167].)

The case of *Department of Public Safety* v. *Buck* (Tex. Civ.App. 1953), 256 S.W.2d 642, is directly in point on this question and the statute there involved is quite identical to the California statute. It provided that ''Every motor vehicle must have devices in good working order which shall at all times be in constant operation to prevent excessive or unusual noises. . . . Every motor vehicle shall at all times be equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise and annoying smoke . . .'' The constitutionality of that statute was attacked on the ground that the use of the words ''excessive'' or ''unusual'' was vague and uncertain and did not set forth an adequate standard of conduct. The trial court there, as here, issued an injunction on that ground. In reversing the judgment of the trial court it said: ''We think any ordinary and interested person would have no difficulty

in determining whether or not an excessive and unusual noise or offensive or excessive exhaust fumes accompanied the operation of a motor vehicle.'' It held that the meaning of the term ''excessive'' is to be determined in the light of, and with reference to, the cause of action asserted, and, as applied to the operators of motor vehicles, it is to be interpreted as descriptive ''of the evil or mischief intended to be prohibited.'' It then cites Webster's New International Dictionary, second edition, as giving the full definition of the word ''excessive,'' i. e., ''Characterized by, or exhibiting, excess; as: a Exceeding what is usual or proper; overmuch. b Greater than the usual amount or degree; exceptional; very great.'' The word ''unusual'' simply means not usual, uncommon. It cites *Omaechevarria* v. *State of Idaho*, 246 U.S. 343 [38 S.Ct. 323, 62 L.Ed. 763], for the general statement that men familiar with actual conditions and desirous of observing the law will have little difficulty in determining what is prohibited.

In *Kovacs* v. *Cooper*, 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608], cited and discussed in *Haggerty* v. *Associated Farmers of California, Inc.*, 44 Cal.2d —— [279 P.2d 734], the court upheld an ordinance which declared it unlawful for any person to use or operate on the public streets any device which emits ''loud and raucous'' noises. The objection centered around the use of the words ''loud and raucous.'' The court said while these are abstract words, they have, through daily use, acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden; that every motor vehicle, when in normal operation, necessarily makes some noise, makes some smoke, and permits gas or steam to escape to some extent; that they are in constant operation on our streets and highways; and even in the sparsely settled areas of our state they are in constant operation in view of the citizens.

The Haggerty case, *supra*, involved an antinoise ordinance making unlawful the emission or transmission of ''any loud and raucous'' noise upon a public highway, etc. It then endeavored to define ''loud and raucous'' noise as any noise made by the motor of a vehicle ''not reasonably required'' in the operation thereof . . . including back-firing, motor racing'' etc., and the human voice when amplified by any device . . . to such an extent as to cause it to carry onto private property or to be heard by others using the public highways'' and any sound of such volume ''as to tend to

interfere with the peace and quiet of persons" thereon. The majority court cited the Kovacs case, *supra,* where it is said that "this ordinance," involving the emission of sound from a truck by means of a sound amplifier or any instrument which emits "loud and raucous noises" is an exercise of the authority granted to the state of New Jersey "to prevent disturbing noises . . . nuisances well within the municipality's power to control." It then held that the ordinance was a proper regulation of the conduct of all persons seeking to use such devices and that the restrictions are uniformly applicable; that it was a reasonable one; that the term "loud and raucous" noise was not so vague and indefinite as to establish no ascertainable standard of guilt; and approved the ordinance in the Kovacs case in this respect and the statement that "while these are abstract words, they have, through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden."

Attack was similarly made in the Haggerty case upon clause one which included noise "of a motor . . . *not reasonably required* in the operation thereof under the circumstances." The claim was that "not reasonably required" was too vague and indefinite a standard of guilt. Many cases are there cited which our Supreme Court discussed and said:

"These cases, however, involve loose definitions, in fields where generally there may be great differences of opinion as to what conduct may be reasonable. A restraint upon the operation of motor vehicles so as to eliminate unreasonable noises operates in an area where a determination as to what is necessary and reasonable may be made more precisely and has a content of fairly fixed meaning to operators of such vehicles. More nearly in point are prohibitions against 'unreasonable or unsafe speed . . . and the use of horns emitting 'an unreasonably loud or harsh sound'." Citing Vehicle Code, section 671.

The terms of the ordinance defining noises which "interfere" and "tend to interfere" with the "peace and quiet" of persons were also similarly challenged. This was held to be a sufficient standard of definiteness.

Similar terms to "excessive" or "unusual" have been upheld by this and other states as not being indefinite or uncertain. "Unreasonable waste of gas," "Unreasonable restraint of trade", "unreasonable use of water"—*People* v. *Associated Oil Co.,* 211 Cal. 93 [294 P. 717]; *Bandini Petroleum Co.* v. *Superior Court,* 110 Cal.App. 123 [293 P. 899];

"Unprofessional conduct" authorizing the dismissal of a teacher—*Board of Education* v. *Swan*, 41 Cal.2d 546 [261 P.2d 261]; "Dissolute and immoral"—*People* v. *Deibert*, 117 Cal.App.2d 410 [256 P.2d 355]; "Willful or wanton disregard for the safety of persons or property"—*People* v. *Smith*, 36 Cal.App.2d Supp. 748 [92 P.2d 1039]; "Unjustifiable physical pain"—*People* v. *Curtiss*, 116 Cal.App. Supp. 771 [300 P. 801]; "Undue or unreasonable restraint of trade" —*Standard Oil Co.* v. *United States*, 221 U.S. 1 [31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.N.S. 34]; "Excessive bail"— "Excessive fine"—*In re Morehead*, 107 Cal.App.2d 346 [237 P.2d 335]; and *Ex parte Ryan*, 44 Cal. 555. See also *People* v. *Kiser*, 112 Cal.App.2d Supp. 903 [245 P.2d 1125]; *Ex Parte Trafton*, —— Tex.Crim. —— [271 S.W.2d 814]; *Max Factor & Co.* v. *Kunsman*, 5 Cal.2d 446 [55 P.2d 177]; *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.*, 299 U.S. 183 [57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476]; *Weco Products Co.* v. *Reed Drug Co.*, 225 Wis. 474 [274 N.W. 426].

In *People* v. *Finch*, 119 Cal.App.2d Supp. 892 [258 P.2d 1124] [Appellate Department of the Los Angeles Superior Court] the claim of the unconstitutionality of section 673 of the Vehicle Code was held to be without merit.

It appears to us that the requirement that a motor vehicle be equipped with a muffler in constant operation so as to prevent any excessive or unusual noise seems as certain as any rule which could be practically enforced. Motor vehicles have been used so long and have become so common, and mufflers so uniformly used to minimize the noise from their exhaust that what is usual has become a matter of common knowledge, and anything in excess of that is excessive and unusual, and usually capable of ascertainment as such. It may be that physicists have established definite standards of loudness of sound and means for measuring it, but this does not mean that such laboratory operations must be carried out by traffic officers on the highway where violators of this statute must be found and the evidence against them obtained. The tendency of the recent decisions is toward a more liberal construction of the rule requiring certainty. (*Pacific Coast Dairy* v. *Police Court*, 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217].) The sections here involved have been on the statute books in substantially the same form since 1913. (Stats. 1913, p. 639, chap. 326, § 16.) The standard there defined has since been applied. The mere fact that there may have

been some new scientific instrument capable of measuring noise more scientifically would not make the statute unconstitutional.

We conclude that the words ''excessive'' or ''unusual,'' when viewed in the context in which they are used are sufficiently certain to inform persons of ordinary intelligence of the nature of the offense which is prohibited, and are therefore sufficient to establish a standard of conduct which is ascertainable by persons familiar with the operation of automobiles.

In view of the conclusions here reached and from the decisions cited, the other claimed reasons advanced why the sections are unconstitutional are equally untenable.

Order reversed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied March 22, 1955, and respondents' petition for a hearing by the Supreme Court was denied April 27, 1955. Carter, J., was of the opinion that the petition should be granted.