[Civ. No. 49116. Second Dist., Div. One. Dec. 28, 1976.]

PAUL C. ANACKER, Plaintiff and Respondent, v.
HERMAN SILLAS, as Director, etc., Defendant and Appellant.

## Counsel

Evelle J. Younger, Attorney General, and Thomas Scheerer, Deputy Attorney General, for Defendant and Appellant.

Paul C. Anacker, in pro. per., for Plaintiff and Respondent.

**OPINION**

LILLIE, J.—The Director of the Department of Motor Vehicles appeals from judgment granting peremptory writ of mandate commanding him to set aside an order suspending respondent's driving privilege under section 16070, Vehicle Code[1] for failure to establish proof of financial responsibility.

The facts are not in dispute. In January 1975 respondent was involved in a motor vehicle accident in which he suffered bodily injury. An accident report was made and revealed that respondent did not possess automobile liability insurance; he did not otherwise demonstrate financial responsibility,[2] then or since. Upon receiving information of these facts the Department of Motor Vehicles ordered respondent to obtain

---

[1]Vehicle Code section 16070, subdivision (a) states: "Whenever a driver involved in an accident described in Section 16000 has failed to establish proof of financial responsibility pursuant to Section 16022, the department shall, if the accident has resulted in damage to the property of any one person in excess of two hundred fifty dollars ($250) or in bodily injury or in the death of any person, suspend the privilege of the driver or owner to drive a motor vehicle, including the driving privilege of a nonresident in this state. The suspension shall become effective not earlier than the 76th day after receipt of the first accident report described in Section 16000 by the department."

Vehicle Code section 16000 provides: "The driver of every motor vehicle which is in any manner involved in an accident originating from the operation of a motor vehicle on any street or highway which accident has resulted in damage to the property of any one person in excess of two hundred fifty dollars ($250) or in bodily injury or in the death of any person shall within 15 days after the accident, report the accident on a form approved by the department to the office of the department at Sacramento, subject to the provisions of this chapter. A report shall not be required in the event that the motor vehicle involved in the accident was owned or leased by or under the direction of the United States, this state, or any political subdivision of this state or municipality thereof."

Vehicle Code section 16022 in relevant part states: "Every driver and owner of a motor vehicle involved in an accident described in Section 16000 who fails to prove the existence of financial responsibility as required by Section 16020 at the time of such accident, shall within 60 days after such accident, file with the department, and thereafter maintain for a period of three years, proof of such financial responsibility."

Respondent concedes that the phrase "any person" as used in section 16000, Vehicle Code to refer to one injured in an automobile accident, encompasses a licensee who is the only person injured. The concession is supported by statutory history. At one time Vehicle Code section 16052 provided that exemption from demonstration of financial responsibility "may be established by filing evidence with the department indicating: (a) That no injury or damage was caused in the accident to the person or property of any one other than the driver or owner of the vehicle. (b) That at the time of the accident the vehicle was parked, unless the vehicle was parked at a place where the parking was at the time of the accident prohibited under some applicable law or ordinance." Section 16052, as it then read was repealed in 1974. No corresponding exemption is now included in the financial responsibility law.

[2]Proof of financial responsibility may be established as provided in section 16050 et seq.

and/or show proof of financial responsibility. Upon his failure to do so, respondent received notice of suspension of his driving privilege. At respondent's request an administrative hearing was held, and suspension was stayed pending the outcome of the hearing. The referee found that respondent had been in a motor vehicle accident which did not result in property damage in an amount greater than $250 but in which respondent had suffered bodily injury; and that respondent had not established proof of financial responsibility.[3] Respondent's driving privilege was suspended.

Respondent thereupon petitioned for writ of mandate herein, contending, inter alia, that the equal protection provisions of the state and federal Constitutions prohibit the suspension of an uninsured motorist's license without a prior showing of fault on his part. The trial court concluded that this contention would be correct if the Financial Responsibility Law (Veh. Code, § 16000 et seq.) applied to respondent in the circumstances, but construed the law to require proof of financial responsibility "when a driver involved in an accident causes bodily injury or death or the requisite amount of property damage to another person."

Appellant considers the issue to be whether the Financial Responsibility Law requires proof of financial responsibility when a driver involved in an accident causes injury to himself. Respondent focuses on whether the law constitutionally can require proof of financial responsibility of a driver involved in an accident without some showing of fault on his part.

The former California financial responsibility laws created a fault-based scheme. (*Orr* v. *Superior Court,* 71 Cal.2d 220, 226 [77 Cal.Rptr. 816, 454 P.2d 712]; *Escobedo* v. *State of California,* 35 Cal.2d 870, 878 [222 P.2d 1].)[4] The United States Supreme Court in *Bell* v. *Burson* (1971)

---

[3]Vehicle Code section 16075, subdivision (b) states: "The department shall conduct the hearing upon demand of the driver or owner, within 60 days of such demand, to determine the applicability of this chapter to such driver or owner, including a determination of whether: (1) The accident has resulted in property damage of less than two hundred fifty dollars ($250), or bodily injury, or death. (2) The driver or owner has established that proof of financial responsibility, as required by Article 3 (commencing with Section 16050) of this chapter, was in effect at the time of the accident."

[4]Both of these cases were overruled in *Rios* v. *Cozens,* 7 Cal.3d 792, 799 [103 Cal.Rptr. 299, 499 P.2d 979], insofar as they held, under prior law, that a licensee was not entitled to a presuspension hearing to determine whether there was a reasonable possibility that a judgment might be recovered against him.

The statutory plan involved in these cases required, upon involvement in an accident in which there was bodily injury or death of any person or property damage in excess of a certain amount to any one person, and in the absence of an exemption, that security be

402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586] held that where suspension of a driver's license depends on fault, due process requires a presuspension hearing which includes consideration of this issue. Our Supreme Court in *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696] (originally 7 Cal.3d 792, 797-799 [103 Cal.Rptr. 299, 499 P.2d 979], vacated and remanded [410 U.S. 425 (35 L.Ed.2d 398, 93 S.Ct. 1019)]; on remand [9 Cal.3d 454], the prior opinion was reiterated and reinstated) followed *Bell* in declaring the California fault-oriented scheme to be constitutionally invalid in the absence of provision for meaningful presuspension hearings. "Following *Rios,* over 20,000 persons have requested such hearings, and the Department of Motor Vehicles, unable to conduct adequate hearings due to a lack of funds and manpower, stayed all proceedings on revocation [*sic*] until the Legislature either changed the law or provided the funds." (*Review of Selected 1974 California Legislation* (1975) 6 Pacific L.J. 335, 340.) In 1972 the Legislature enacted as an interim measure section 16080.5, Vehicle Code, subdivision (a), of which provided that upon receipt by the Department of Motor Vehicles of a request for a hearing regarding prejudgment suspension for failure to prove financial responsibility, provisions of the law relating to suspension would be stayed. (Stats. 1972, ch. 1179, § 1.)

In 1974, the Legislature repealed the old Vehicle Code division 7, chapter 1, and enacted the present sections 16000 to 16075. (Stats. 1974, ch. 1409, §§ 7, 8.) The Legislature left no doubt that fault was no longer to be at issue when the question of the financial responsibility of a driver involved in a motor vehicle accident arose: "The Legislature finds that as a result of the difficulty of ascertaining a likelihood of fault in connection with vehicle operation, the number of financially irresponsible motor vehicle owners and operators has increased dramatically. The Legislature further finds that such fault determinations, and the costs associated therewith, do not further the purpose of the financial responsibility laws. Therefore, the Legislature declares that it is the policy of this state that those owning or operating motor vehicles on the streets or highways of this state shall be financially capable of providing monetary protection to those suffering injury to their person or property by reason of the ownership or use of such vehicles *without regard to the negligence, liability, carelessness, or culpability of the owners or operators thereof,* and further, that such capability shall be deemed a concurrent responsibility of such motor vehicle ownership or operation. The Legislature further

---

posted "in a sum which shall be sufficient in the judgment of the department to satisfy any final judgment or judgments . . . resulting from such accident" (former § 16020 based on earlier § 420) on pain of suspension of driving privilege.

declares that it is the public policy of this state that those owning or operating motor vehicles on the streets or highways thereof shall evidence such financial capability by the methods specified in this act." (Stats. 1974, ch. 1409, § 1.) (Italics added.)[5]

Respondent would have us hold that the Legislature impermissibly excluded fault as an issue at the presuspension hearing. Essentially his argument is that by requiring proof of financial responsibility from those drivers involved in accidents but not from those not so involved creates a classificatory scheme which bears no rational relationship to the purpose of the legislation. But respondent's position is premised on too narrow an appreciation of the Financial Responsibility Law. ▮ The law does not require that only negligent drivers be financially responsible; rather, it requires that "Every driver of, and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021."[6] (§ 16020.) It is true that only those drivers involved in accidents of the kind described in section 16000 must *prove* financial responsibility, but involvement in the accident does not create the obligation to be financially responsible, it merely provides the occasion for demonstrating that a preexisting obligation has been satisfied. Thus respondent misstates the purpose of the law as being to assure that "negligent drivers, i.e., those likely to cause future accidents are financially responsible." Instead the assurance is that all drivers, negligent or not, are financially responsible.[7]

---

[5]While respondent contended below that the Financial Responsibility Law is, despite the intention of the Legislature, fault-based, he does not now renew this contention.

[6]Section 16021 states: "Financial responsibility of the driver or owner is established if the driver or owner of the vehicle involved in an accident described in Section 16000 is:

"(a) A self-insurer under the provisions of this division.

"(b) An insured or obligee under a form of insurance or bond which complies with the requirements of this division.

"(c) The United States of America, this state, any municipality or subdivision thereof, or the lawful agent thereof.

"(d) A depositor in compliance with subdivision (a) of Section 16054.2.

"(e) In compliance with the requirements authorized by the department by any other manner which effectuates the purposes of this chapter."

[7]Respondent makes no effort to distinguish or impeach a long line of pre-*Bell* cases in other jurisdictions upholding the requirement of proof of financial responsibility without respect to the question of fault. (E.g., *Perez* v. *Tynan* (D.Conn. 1969) 307 F.Supp. 1235, 1240; *Agee* v. *Kansas Highway Com'n. Motor Vehicles Dept.* (1967) 198 Kan. 173 [422 P.2d 949, 953-954]; *Ballow* v. *Reeves* (Ky.App. 1951) 238 S.W.2d 141, 142; *Larr* v. *Dignan* (1947) 317 Mich. 121 [26 N.W.2d 872, 874]; and see *Turner* v. *State Dept. of Motor Vehicles,* 265 Cal.App.2d 649, 652-653 [71 Cal.Rptr. 616].) And *Bell* itself does not resolve the issue. Although the Georgia statute there in question did not by its terms require a showing of fault, the Supreme Court, looking to its substance and not its form, described the Georgia Motor Vehicle Safety Responsibility Act as a "fault-oriented scheme." (402 U.S. at pp. 540-541 [29 L.Ed.2d at pp. 95-96].) In *Orr* v. *Superior Court,*

■ While one's driving privilege is an "important interest" (*Bell* v. *Burson,* 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586]), we do not conceive it to be a "fundamental right"[8] of the kind which demands heightened judicial scrutiny in the face of an equal protection claim.

■ Nor do we perceive the classification based on involvement in an accident to be in any way "suspect."[9] ■ Accordingly, if equal protection analysis is to be employed, we must apply " 'The . . . basic and conventional standard for reviewing economic and social welfare legislation . . . [which] manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and "requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784 . . .)' (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].)" (*Schwalbe* v. *Jones,* 16 Cal.3d 514, 517-518 [128 Cal.Rptr. 321, 546 P.2d 1033].) ■ Respondent must bear the burden of demonstrating the alleged invalidity of the scheme. (*Id.* at p. 518.) He has failed to do so. The Legislature could have required proof of financial responsibility as a condition precedent to the issuance of a driver's license (*Ex Parte Poresky* (1933) 290 U.S. 30, 32 [78 L.Ed. 152, 153, 54 S.Ct. 3]); instead it has required that proof upon involvement in an accident. Effectively, then, the Legislature has opted for a random spot-check on the financial responsibility of California drivers.

In some sense a person may rightly complain that it is unfair for him to have to establish proof of financial responsibility while others, not

*supra,* 71 Cal.2d 220, this question was raised, but because the California scheme was deemed fault-based the court did not consider "possible constitutional infirmities of a statute which dispensed with any necessity to consider fault." (At pp. 226-227.)

[8]"The fundamental right furnishing a basis for invoking strict scrutiny must be explicitly or implicitly guaranteed by the Constitution. [Citation.] Rights held fundamental include privacy [citation], voting [citation], and interstate travel [citation]." (*Adams* v. *Superior Court,* 12 Cal.3d 55, 61 [115 Cal.Rptr. 247, 524 P.2d 375].)

In *Miller* v. *Malloy* (D.Vt. 1972) 343 F.Supp. 46, 50 the court, based on the facts of the case, took plaintiff's interest in his driving privilege to be fundamental, and proceeded to find a compelling state interest to be represented by the Vermont Financial Responsibility Law.

[9]Suspect classes include those based on alienage (*Raffaelli* v. *Committee of Bar Examiners,* 7 Cal.3d 288, 292 [101 Cal.Rptr. 896, 496 P.2d 1264, 53 A.L.R.3d 1149]), sex (*Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1, 18 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]), and wealth (*Serrano* v. *Priest,* 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]). Respondent vaguely suggests that somehow the classification herein is based on wealth. However, the fact that proof of financial responsibility may be more easily made by the affluent in no way makes this a wealth-based classification.

involved in an accident, do not. In the same sense it might be unfair to audit the tax return of one person and not of another (Int. Rev. Code of 1954, § 7602; see *United States* v. *Powell* (1964) 379 U.S. 48, 57-58 [13 L.Ed.2d 112, 119-120, 85 S.Ct. 248] or to conduct a passenger vehicle equipment inspection on one automobile but not on a second one. (Veh. Code, § 2414.)[10] But "unfair" is not "unconstitutional." While one might propose other, perhaps better ways to assure that owners and operators of motor vehicles are financially responsible this is not to say that the method adopted by the Legislature is irrational.[11] ■ Weighing of the benefits and burdens of alternative plans is a peculiarly legislative task. ■ As was observed by the court in *Boykin* v. *Ott,* 10 Ore.App. 210 [498 P.2d 815, 822], app. dism. 411 U.S. 912 [36 L.Ed.2d 304, 93 S.Ct. 1554], in which a conclusion similar to our own was reached: "Our role is not to pass on the wisdom of a statutory scheme but only to determine whether there is the constitutionally-required minimum rationality to the classification it creates."

Turning to the issue framed by appellant, we initially note that there does not appear to be any reason why the Legislature could not have required proof of financial responsibility where the requisite amount of property damage or bodily injury was sustained by the very individual whose driving privilege is at issue. Some states have expressly provided for such a result. The further question, however, is whether the financial responsibility law does so provide.

The section refers to a motor vehicle accident resulting in "damage to the property of *any* one person . . . or in bodily injury or in the death of any person." (Italics added.) (§ 16070, subd. (a), Veh. Code.) ■ Obviously the Department of Motor Vehicles construes this language literally to include bodily injury to any person involved in the accident, rather than to any person other than the driver whose driving privilege is at issue. Even were this construction not entitled to great weight (*Holloway* v. *Purcell,* 35 Cal.2d 220, 226 [217 P.2d 665], cert. den., 340 U.S. 883 [95 L.Ed. 641, 71 S.Ct. 196]), we would reach the same

---

[10] *People* v. *De La Torre,* 257 Cal.App.2d 162 [64 Cal.Rptr. 804], holding the section constitutional on its face states, at page 164: "While many states require all vehicles to undergo periodic safety checks, California reaches the same problem by random checks supported, if necessary, by roadblocks."

[11] Considering that in 1974 there were in California 163,920 motor vehicle accidents involving fatalities or bodily injury, the treating of such accidents as the occasion for examining the financial responsibility of the vehicle drivers involved would yield a not unreasonable sample of the 13,176,000 driving licenses outstanding at the time. (Cal. Statistical Abstract 1975, pp. 104-105.)

conclusion. Inasmuch as we have viewed the occurrence of an accident of certain gravity as the occasion for examining the compliance of the involved drivers with their preexisting statutory obligation to be financially responsible, it is clear that the law is more fully served when proof of financial responsibility is required without respect to who has suffered the injury. Admittedly, the Legislature could have narrowed its sampling of drivers in a number of ways, including one which would exclude respondent and others similarly situated from the category which must prove financial responsibility. It can still do so. But until that time even the person who suffers bodily injury in a motor vehicle accident may be obliged to demonstrate his financial responsibility.

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 21, 1977, and respondent's petition for a hearing by the Supreme Court was denied February 23, 1977.